INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY v. MRS. MAY H. SWAYNE ET AL.

No. 4512.   Decided January 18, 1928.
(1 S. W., 2d Series, 609).

248

*Andrews, Streetman, Logue & Mobley, Samuel B. Dabney,* and *Taylor & Atkinson,* for appellant.

The question as to the authority of the Federal Court to reserve jurisdiction has been passed upon many times in this and other jurisdictions. The case of Smith v. M. P. R. R. Co., 266 Fed., 653, was recently decided and is upon precisely the same reservations of jurisdiction as herein involved. The power to make these reservations has been sustained by the Supreme Court of Texas in the case of H. & T. C. R. R. v. Crawford, 88 Texas, 279. See also Julian v. Trust Co., 193 U. S., p. 93; Long v. Railroad Co., 160 Fed., 355; Chicago Electric Ry. v. Hubert, 205 Fed., 248; Central Union Trust Co. v. Anderson County, 45 Sup. Ct. Reporter, 427.

The trial court erred in rendering judgment for the plaintiffs and against the defendant because the plaintiffs' cause of action is predicated solely upon the terms of Art. 6624 and the agreement thereunder, and the evidence shows that the claim of plaintiffs is not for damage to property sustained by the operation of *the railroad in question by I. & G. N. Ry.,* or second corporation, but that such claim is for damage sustained in the operation of the railroad in question by I. & G. N. R. R., or the first corporation. Rosenthal v. Railway Co., 79 Texas, 326, 15 S. W., 268; Railway Co. v. Anderson, 79 Texas, 427; Smith v. T. & P. Ry. Co., 180 S. W., 320; Trinity Portland Cement Co. v. Horton, 214 S. W., 150; City of Graham v. Mosley, 254 S. W., 130; City of Austin v. Bush, 260 S. W., 300; McMahan v. City of Abilene, 261 S. W., 455; City of Greenville v. Elliott, 263 S. W., 1076; Perry v. Railway Co., 162 S. W., 1185; Lyles v. Railway, 73 Texas, 95; Settegast v. Railway, 87 S. W., 197; M.-K.-T. Ry. v. Graham, 33 S. W., 576; Railway v. McAuley, 121 Ill., 160, 11 N. E., 67; Powers v. Council Bluffs, 45 Iowa, 652; 24 Am. Rep., 792; Railroad Co. v. Loeb, 118 Ill., 203; 59 Am. Rep., 341; Frankle v. Jackson, 30 Fed., 399; Baugh v. Railway Co., 80 Texas, 56.

Appellant contends that the liability, if any, against the defendant below by reason of Art. 6624 and the agreement thereunder was in the nature of a claim *in rem* and did not impose any personal liability

upon the defendant below. Gulf, C. & S. F. Ry. v. Newell, 73 Texas, 334; Gulf, C. & S. F. Ry. v. Morris, 67 Texas, 700; Texas Southern Ry. v. Harle, 101 Texas, 181; H. & T. C. R. R. v. Shirley, 54 Texas, 125; Acres v. Moyne, 59 Texas, 623; Williams v. Texas Midland, 55 S. W., 130; Texas Central R. R. v. Lions, 34 S. W., 362.

*Ocie Speer,* for appellees.

If it should be held that the Honorable United States District Court for the Southern District of Texas did, by proper orders, reserve to itself the exclusive right and power to hear and determine all questions affecting the properties to be administered by it, still the judgment of the trial court herein being *in personam* against the appellant and in no manner made a charge against said property, such reserved jurisdiction has not been violated and appellant can not complain thereof, and the overruling of the plea to the jurisdiction was proper.

The contention by appellant that the matter of plaintiff's claim has been adjudicated, has been definitely decided against it in the recent case of International & G. N. Ry. Co. v. Concrete Investment Co., 263 S. W., 265, speaking to the very point. The court in that case said: "The question as to whether the claims here sued upon were such liabilities of the company as would constitute a charge upon the property under the statute, was never raised or adjudicated in the Federal Court. The only question there determined was that these claims were not entitled to a preference under the equity rule."

In International & Great Northern Railway Company v. Concrete Investment Company the court construes this identical language and holds that the expression "the property and franchises so purchased shall be charged with and subject to the payment of all subsisting liabilities and claims" therein defined, makes the purchasing company liable personally and not merely holder of the property subject to the statutory lien.

So, also, in International-G. N. R. R. Co. v. Oehler, 262 S. W., 785, the Court of Civil Appeals for the Sixth District, construing the very transaction here involved, holds that the purchaser of a railroad sold out by a receiver under Art. 6624, is liable personally for the class of claims therein protected. The Supreme Court refused a writ.

Upon the succession to the railroad properties by the International & Great Northern Railway Company and upon its operation of the same, it necessarily became personally liable for the damages to

adjacent property by reason of its own act in operating the railroad, since its predecessor had not satisfied said claim, not because its predecessor was liable therefor, but because it was personally liable as for its own wrong, independent of any liability upon the part of its predecessor.

Mr. Judge NICKELS delivered the opinion of the Commission of Appeals, Section A.

Prior to 1902 the International & Great Northern *Railroad* Company was incorporated under the laws of Texas for the purpose of constructing or acquiring, owning and operating a railroad, and thereby procured franchises given to a corporation of that class. In 1902 it constructed a line of railroad into the City of Fort Worth, and, in so doing, took certain land belonging to Mrs. Swayne. As a result of the location of the road, the manner of its construction and consequent interference with passageways, etc., the balance of the land owned by her in the *immediate vicinity* was damaged originally and became subject to damage by operation of the road throughout its future.

In 1904, Mrs. Swayne et vir. sued that corporation and prayed recovery of damages in respect to the land not actually taken. The damages claimed were laid at $10,000. In due time (in 1904) the corporation answered. The suit pended, with nothing further done in it, until January 5, 1916.

In 1908 and upon complaint of the Mercantile Trust Company of New York, and Farmers' Loan & Trust Company of New York, an order was entered by the District Court of the United States for the Northern District of Texas appointing T. J. Freeman receiver of and for the properties, etc., of the railroad corporation. Foreclosure of certain mortgages was sought by the complainants, and it was decreed. Freeman held and operated the properties *pendente lite* and until they were sold in the foreclosure in 1911.

The purchasers selected and took the benefits offered through the terms of what is now Art. 6422, R. S., 1925, and thereunder formed a corporation styled International & Great Northern *Railway* Company. This corporation, in the status of a new entity, acquired and thereafter held and used both the properties and franchises of the old, or "sold-out," corporation.

In 1914, Central Trust Company of New York filed suit in the District Court of the United States for the Southern District of Texas and prayed foreclosure of certain mortgages as against the

corporation formed in 1911 and its properties, etc., and on August 10, 1914, Baker and Lyons, as receivers appointed in the cause, took charge of the properties and thereafter operated. Lyons was relieved, and Baker, sole receiver, continued operation until the sale, under foreclosure, in 1922.

In 1915 an agreement was made by Mrs. Swayne et vir. on the one hand, and the corporation (formed in 1911), on the other, with respect to the subject matter of her suit (filed, as stated, in 1904) and whereby one Tucker was authorized to make full investigation and determine the amount in which Mrs. Swayne's property "was damaged by reason of the building, construction and operation of said line of railroad." It was agreed that that corporation would make itself a party to the suit, and that judgment for the amount determined by Tucker, with interest thereon at six per centum per annum from July 1, 1902, should be rendered against it. Pursuant to this agreement the new corporation made itself a party and judgment was rendered against it (on January 5, 1916) for the sum of $3,060.00, etc. The judgment includes reference to and full description of the agreement and approval of it as basis for the relief granted. No appeal was made, nor was the judgment ever modified or vacated.

July 28, 1922, the railroad properties and franchises were sold to Baillie & Moore, under foreclosure decree procured by Central Trust Company and entered in 1915. The sale was confirmed by order of date August 10, 1922, except that (upon application of Baillie & Moore) the deed, etc., was ordered to be made to a corporation which, they said, was or would be chartered according to the laws of Texas and called "International-Great Northern *Railroad* Company." No such corporation was then in existence.

The agreement referred to as having been made by Mrs. Swayne et vir. and International & Great Northern *Railway* Company, and upon which her judgment was predicated, included a provision that Mrs. Swayne "may intervene" in the Central Trust Company suit and thereupon "shall have said judgment allowed as herein provided against the said International & Great Northern Railway Company." On July 31, 1922, such an intervention was filed by Mrs. Swayne et al. wherein they undertook to show that they were "in equity and in law entitled to a priority of right in payment of this their claim" and prayed approval of the claim "as a just and lawful one" one "entitled to priority of payment above ordinary claims," etc. May 17, 1923, the District Court of the United States for the Southern

District of Texas entered an order in respect to the intervention in which it was "ordered, adjudged and decreed * * * that May H. Swayne and John F. Swayne do have and recover of and from the International & Great Northern Railway Company the said sum of Three Thousand and Sixty and 00/100 ($3,060.00) Dollars, with interest from January 5, 1916, at the rate of six per centum per annum, and that the same be and is hereby established as a general and unsecured claim against the property of said railway company in the possession of James A. Baker, Receiver," etc.

It will be remembered that in procuring the order of confirmation (on August ·10, 1922) Baillie & Moore, bidders at the foreclosure sale, represented to the United States District Court that a corporation had been formed, or would be formed, under the Texas law and whose name was, or should be, International-Great Northern *Railroad* Company to which they proposed to transfer the properties, etc., and that, upon the representation and request, deed was ordered to make directly to that corporation. A new corporation was not formed (pursuant to Art. 6422, or otherwise). What was done was amendment of the old charter whereby the name "International & Great Northern Railway Company" was changed to "International-Great Northern Railroad Company," and the deed was executed (in November, 1922) to the corporation (formed under Art. 6422 in 1911) but in its new name.

The order of confirmation entered, as stated, on August 10, 1922, by the District Court of the United States, provides for retention of jurisdiction in words as follows:

"The court reserves jurisdiction over the property sold with reference to all claims against the sold-out International & Great Northern Railway Company, which have been litigated or may hereafter be litigated in this or any court, so far as to enforce the payment of any judgments therefor out of the property sold, if the same be not paid within ninety days after the delivery of the deed (therein provided for) to the purchasers or their assignee, if such judgments are within the protection of the Revised Statutes of Texas, Arts. 6624 and 6625, or either of such articles, and the payment thereof is hereby made a charge upon the property.

"All questions relating to amounts of compensation charges, allowances, costs, disbursements and expenses, referred to in said Final Decree, and to suits now pending in this court in this cause, or affecting the property above dealt with, are hereby respectfully reserved by this court for further hearing and determination, and all

adjustments and payments to be made, unless agreed upon by the parties in interest, shall hereafter be determined, fixed, allowed and settled by this court, and all questions not hereby disposed of are reserved for future adjudication, including all claims pending or hereafter made against the property sold originating under the receiver, the defendant or its predecessors in title. Any party to this cause and any party who has intervened in this cause, may at any time apply to this court for further relief at the foot of this order."

November 10, 1923, Mrs. Swayne et vir. filed the present suit in the District Court of Tarrant County, Texas, Sixty-seventh District, against International-Great Northern Railroad Company. The judgment rendered against International & Great Northern Railway Company on January 5, 1916 (above described), was pleaded in *haec verba*, and the order entered by the District Court of the United States on May 17, 1923 (on the intervention above described), was substantially averred. Non-payment was charged, and it was alleged that:

"Plaintiffs would show that by reason of the facts herein alleged the defendant is liable and promised to pay to plaintiffs the amount of said judgment with interest thereon and costs of the court rendering said judgment * * * and plaintiffs are yet the owners and holders of said claim and judgment as herein shown and entitled to collect the same," etc.

Judgment "against the defendant for their damages according to the facts shown" and, in the alternative, "establishing the existence, validity and amount of their claim" and declaring "the same to be a lien and charged all of the property and franchises of the defendant" (with foreclosure), etc., was prayed. The petition contained other averments which, in so far as material, will be noticed in other connections. *In limine* defendant pleaded that the court had not jurisdiction because of the proceedings, sale, retention of jurisdiction, etc., in the Central Trust Company suit in the District Court of the United States—those proceedings, etc., being fully disclosed. In due order, it then set up existence of *res judicata* because of intervention by Mrs. Swayne et vir. and order thereon, in said Central Trust Company suit. With the latter plea was one to the effect that the claim sued on does not belong to any of the classes of claims described (for protection) in Art. 6624 or Art. 6625, R. S., 1911 (now Arts. 6421 and 6422, R. S., 1925). Dismissal was prayed. The pleas were overruled. Defendant then interposed

a general demurrer, a general denial and special defenses setting up the subject matter of the above mentioned pleas.

Upon trial (without jury) the substantial fact averments of all parties were proved, and judgment was rendered in favor of Mrs. Swayne et vir. for the amount of the former judgment, interest, etc. The corporation appealed, and the Honorable Court of Civil Appeals, Second District, has transmitted the record with a certificate summarizing the pleading and evidence and propounding these questions:

"1. Did the trial court in the present suit err in overruling the plea to the jurisdiction?

"2. In view of the fact that in the plea of intervention in the Federal Court involved in this case, a lien was claimed upon the property 'in equity and in law,' and that the plea was filed after the enactment of Arts. 6624 and 6625 (R. S., 1911), and that the same was predicated solely upon the judgment theretofore rendered in cause No. 22939 of the District Court of Tarrant County, which latter judgment was rendered upon the original pleadings pointed out, filed in that court during the year 1904, and upon the agreement of the parties recited in that judgment, did the trial court err in overruling appellant's plea of *res adjudicata* filed in this suit?

"3. Does plaintiff's claim for which suit was brought come within that class of claims protected by and designated in Art. 6624" (R. S., 1911), "as claims 'for loss of and damage to property sustained in the operation of the railroads by the company and by the receiver thereof' or within that class of claims protected by Art. 6625 and designated therein as claims 'for loss of and damage to property sustained in the operation of the railroad by the sold-out company and by any receiver thereof,' and was it a pending claim when the second receiver was appointed or when the sale was made to the defendant in this suit, within the meaning of either of those articles?

"4. If the foregoing questions are determined adversely to appellant, then should the judgment of the trial court be affirmed upon the uncontroverted facts recited, notwithstanding the fact that plaintiff's suit, as shown by their pleadings, was based primarily upon the provisions of Art. 6624 and the agreement therein required of the purchaser, which was executed by Baillie & Moore, the purchasers at foreclosure sale, and not upon the terms of Art. 6625, under which appellant was incorporated and who, after such incorporation, took over the property at the instance of Baillie & Moore and with the approval of the court that ordered and confirmed the sale?"

OPINION.

Mrs. Swayne's suit, filed in 1904 and pending when the second receivership began, was upon a cause of action to which maintenance and operation of the railroad throughout the years of its existence prospectively contributed—and this without regard to operation by the original corporation, receivers or remote vendees. Her "right to recover was as broad as the lapse of years could make it," and in the amount of recovery would be included whatever of damage might arise (inevitably, would arise) in future operation of the railroad property whose building, maintenance and operation is the subject of her complaint. Lyles v. Railway Co., 73 Texas, 95, 11 S. W., 782; Settegast v. Houston, O. L. & M. P. Ry. Co., 38 Texas Civ. App., 623 (writ denied), 87 S. W., 197, 201. The damage to property for which she sought accrued (by relation) in substantial part, at least, during operation by the second "receiver" Baker (or "receivers" Baker and Lyons), and in another substantial part during operation, etc., by the corporation (subsequent to that receivership) and its still future receivers and its vendees, if any. We are not concerned with excessiveness or improper elements of allowance, if any.

Her claim (asserted in "suit * * * pending * * * when the receiver was appointed," August 10, 1914), then, must be treated as being one "for loss of and damage to property sustained in the operation by the company and by * * * receiver thereof" within the terms of the agreement required in Art. 6421, R. S., 1925 (Art. 6624, R. S., 1911).

The opinions and rulings in I. & G. N. Ry. Co. v. Concrete Investment Co. (Texas Com. App.), 263 S. W., 265; I. & G. N. Ry. Co. v. Oehler (Texas Civ. App., writ denied), 262 S. W., 785, sufficiently indicate the effect of the statute and of the voluntary agreement under its requirements to preserve the claim as now sought to be enforced and as against all questions suggested. See also I. & G. N. Ry. Co. v. Clerk, C. C. A., 4 Fed. (2nd), 24.

We recommend that Questions Nos. 1 and 2, each, be answered "No," and that Question No. 3 be answered "Yes." An answer to Question No. 4 is requested only in event those given to Questions 1, 2 and 3 are different from those recommended.

Opinion of the Commission of Appeals answering certified questions adopted, and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.